UNITED STATES of America,
Plaintiff-Appellee,

v.

Harland Lee BLACK,
Defendant-Appellant.

No. 78–3052.

United States Court of Appeals,
Ninth Circuit.

Dec. 26, 1979.

Alan G. Perkins, Sacramento, Cal., for defendant-appellant.

Fern M. Segal, Sacramento, Cal., for plaintiff-appellee.

Before WALLACE and ANDERSON, Circuit Judges, and SOLOMON *, District Judge.

SOLOMON, District Judge.

Appellant Harland Lee Black mailed threatening letters to two United States District Judges. He was charged in four counts with mailing these letters in violation of 18 U.S.C. § 876. Black was convicted on all four counts. He appealed. We affirm.

In February 1973, Black was indicted on two counts of mailing threatening letters to District Judge Philip Wilkins and two

---

* The Honorable Gus J. Solomon, Senior United States District Judge for the District of Oregon, sitting by designation.

counts of obstruction of justice. The letters were mailed when Black was serving a sentence on state convictions for robbery, assault with a deadly weapon, and kidnapping. Black entered a plea of not guilty to each count of the federal indictment.

In July 1973, Black mailed two other threatening letters to United States District Judge Edward Schwartz.

After a psychiatric examination, Black was found competent to stand trial. In November 1973, he and the United States Attorney entered into a plea agreement by which he agreed to plead guilty to one count of obstruction of justice and the United States Attorney agreed to dismiss the remaining counts in the indictment. The United States Attorney also agreed not to prosecute Black on the letters sent to Judge Schwartz. Based on this agreement Black entered a plea of guilty to one count of obstruction of justice and was sentenced to five years imprisonment, to be served consecutively to his state sentence. The other counts were dismissed.

After Black was paroled on his state sentence and while he was serving the federal sentence, he filed a § 2255 motion (28 U.S.C. § 2255) to vacate, for lack of a factual basis, the guilty plea on the obstruction of justice charge. He was successful and both his guilty plea and sentence were vacated.

Thereafter, on motion of the United States Attorney, the original indictment was reinstated and on September 7, 1977 Black was released on bail.

On September 14, 1977, the Government filed a superseding indictment charging Black with two counts of mailing threatening letters to Judge Wilkins and two counts of mailing threatening letters to Judge Schwartz. Black moved to dismiss the indictment. He asserted that (1) the additional counts based on the threats to Judge Schwartz constituted vindictive prosecution; (2) the Government violated the Interstate Agreement on Detainers; and (3) the delay in bringing the additional counts

from July 1973 to September 1977, deprived him of due process of law.

While he was out on bail, Black committed an armed robbery. He pleaded guilty to the crime in state court and his state parole was revoked. As a result his federal court bail was also revoked.

In December 1977, Black was returned to state custody where he was sentenced. He remained in state custody for two months, after which he underwent another psychiatric examination to determine his competency to stand trial on the federal charges.

On June 13, 1978, Black was found competent to stand trial. On July 7, 1978, the court denied Black's motion to dismiss the indictment. Black was tried on stipulated facts, and on August 30, 1978, he was convicted on all four counts. He was sentenced to five years' imprisonment on each count, with the sentences on counts III and IV to be consecutive to counts I and II, for a total of ten years.

■ Black first contends that the additional counts in the superseding indictment, and the total sentence of ten years, constitute vindictive prosecution and vindictive sentencing in violation of due process of law. It is well established that due process of law requires that ". . . vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *North Carolina v. Pearce*, 395 U.S. 711, 725–726, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969). *See also Blackledge v. Perry*, 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974).

The district court held that the prosecutor's action in adding the new counts was not vindictively motivated. We agree.

In *Pearce* and in *Blackledge*, the defendants were subjected to increased charges and longer sentences for the same conduct on which they had been charged and sentenced. Here the additional counts in the superseding indictment were based on

threatening letters mailed to Judge Schwartz after the original indictment had been returned.

The government was not precluded from charging the new offenses because it was no longer bound by the plea agreement. The government should not be locked into its side of the plea bargain when a defendant succeeds in having his plea to the count on which he agreed to plead guilty vacated. *See United States v. Gerard*, 491 F.2d 1300 (9th Cir. 1974); *United States v. Ruesga-Martinez*, 534 F.2d 1367 (9th Cir. 1976).

Black next contends that his ten year sentence was vindictive. As a result of a plea bargain, Black received five years on one count. He asserts that he was given a ten year sentence because he chose to exercise his statutory right to challenge his first conviction and that the longer sentence was a violation of the equal protection clause of the 14th amendment.

There is no merit to either contention. Black was sentenced to the maximum on the one count to which he pleaded guilty under the plea bargain agreement. When he was resentenced there were four counts, two of them for offenses committed after he had been originally indicted. In addition, after he had been sentenced on the first indictment and while out on bail, Black had committed another armed robbery.

Black next contends that the government violated the Interstate Agreement on Detainers Act (IAD). Specifically, he charges that the government violated the anti-shuttling provisions of the IAD, art. III(d) and IV(e), and the speedy trial provisions of art. III(a) and IV(c). The district court did not rule on the merits of these contentions because neither the prosecutor nor the defense counsel produced a record of a detainer having been lodged against Black.

Although we denied Black's motion for a limited remand to consider the IAD issues, we took judicial notice of exhibits which showed that the government lodged a detainer against Black on February 26, 1973.

Ordinarily an appellate court will not consider an issue not raised or passed on by a trial court. *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *Bustamante v. Cardwell*, 497 F.2d 556, 558–59 (9th Cir. 1974). But when the issue conceded or neglected in the trial court is purely one of law and the pertinent record has been fully developed, the court of appeals may consider it, particularly when as here the issues have been fully briefed. *United States v. Patrin*, 575 F.2d 708, 712 (9th Cir. 1978).

There are two separate periods relevant to our inquiry. The first is in 1973. In February 1973, the government lodged a detainer against Black after an indictment was returned charging him with mailing threatening letters and obstructing justice. At Black's request he was arraigned in federal court in March 1973.

In November 1973, Black entered a plea of guilty to one of the four counts, and he was sentenced to five years imprisonment to be served consecutive to his state prison sentence. In 1976, Black was paroled from state prison and began serving his federal sentence.

The second period was in 1977–78. In August 1977, Black's guilty plea was vacated and he was reindicted on the federal charges. Black contends that the IAD was applicable to him in the proceedings which followed his reindictment on the federal charges, because of the detainer lodged against him in 1973.

■ The IAD applies to a prisoner incarcerated in one jurisdiction, who is wanted on charges filed in another jurisdiction. When Black was released on parole from the state prison and was transferred to federal custody, he was no longer in the class of prisoners covered by the IAD.

■ When Black successfully challenged his original guilty plea on the federal charge, he was released on bail. Bail was revoked and he was returned to federal

custody when he committed another state offense. In December 1977, he was released to state custody solely to permit the state court to sentence him on the state offense. He was in federal custody subject to outstanding state charges. If IAD provisions apply, it would be the state, and not the federal government which would be subject to the speedy trial and anti-shuttling provisions. We therefore conclude that the 1973 detainer was not applicable to the 1977–78 federal proceedings.

There is another basis for concluding that the 1973 detainer did not apply to the 1977–78 proceedings. Black's guilty plea and sentencing in 1973 disposed of both the outstanding federal charges and the government's detainer. The provisions of the IAD were satisfied upon his return to state custody after disposition of the federal charges. The 1973 detainer was not revived when Black successfully vacated his guilty plea in 1977, because, at that time, Black was in federal custody after his parole from state prison.

■■■ Black also contends that the federal government violated the IAD in 1973 when he was first charged with federal offenses. He asserts that the federal government violated the anti-shuttling provisions of articles III(d) and IV(e)[1] of the IAD when, after being arraigned in federal court he was returned to state custody before being tried on the federal charges. The Government contends that Black waived his rights under the IAD when he pleaded guilty to the federal charges in November 1973 and when he requested his return to state custody.

Black was returned to state custody on three occasions before he was finally sen-

tenced on federal charges. On each occasion he requested the return. A defendant waives the protections of the IAD's anti-shuttling provisions when he requests the transfer before final disposition of the outstanding charges. *United States v. Ford*, 550 F.2d 732 (2nd Cir.), *aff'd sub nom. United States v. Mauro*, 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978); *United States v. Scallion*, 548 F.2d 1168 (5th Cir.), *cert. denied*, 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978). Black contends that even though he requested the transfers, he did not knowingly and intentionally relinquish his rights under the IAD. Neither *Ford* nor *Scallion* requires that such a waiver be knowingly and intelligently made. This requirement applies "only to those rights which the Constitution guarantees to a criminal defendant in order to preserve a fair trial." *Schneckloth v. Bustamente*, 412 U.S. 218, 237, 93 S.Ct. 2041, 2052, 36 L.Ed.2d 854 (1973). The protections of the IAD are not founded on constitutional rights, or the preservation of a fair trial, but are designed to facilitate a defendant's rehabilitation in prison and to avoid disruptions caused when charges are outstanding against the prisoner in another jurisdiction. We conclude that Black, when he requested the return to state custody, waived his right and could not later contend that he did not do it knowingly and intelligently.

■■ Black also asserts that the government violated the speedy trial provisions of the IAD. We limit this contention to the 1973 proceedings because we have previously concluded the IAD was not applicable to the 1977–78 proceedings.

Article IV(c) requires that, except for good cause shown, trial must be held on the outstanding charges within 120 days of the defendant's arrival in the prosecuting jurisdiction. Black was arraigned in federal court on March 6, 1973. On May 25, 1973,

---

1. Article III(d) provides:

"If trial is not had on any indictment . . . prior to the return of the prisoner to the original place of imprisonment, such indictment . . . shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

Article IV(e) provides:

"If trial is not had on any indictment . . . prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment . . . shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice."

he requested a continuance until October 15, 1973. He pleaded guilty on November 20, 1973. The total delay chargeable to the government is only 116 days.

Black's final contention is that there was an impermissible delay in bringing the new counts charging him with mailing threatening communications to Judge Schwartz. The delay was from July 1973, when the offenses occurred, to September 1977, when the new indictment was returned.

Even if the delay occasioned by the guilty plea to one count pursuant to the plea agreement and the setting aside of that plea approximately three years later may be considered, defendant was still required to prove that he suffered actual prejudice resulting from the delay. *United States v. Mays*, 549 F.2d 670 (9th Cir. 1977). The only prejudice Black asserts that he suffered is the loss of memory on the letters he wrote to Judge Schwartz. But this is the same excuse he gave in 1973 when he said that he was on medical treatment and could not remember having sent the letters.

The district court ruled that Black failed to establish actual prejudice. That ruling is not clearly erroneous.

The judgment of conviction and the sentences are

AFFIRMED.