729 P.2d 935

STATE of Arizona, Appellee,

v.

James Robert BURRUS, Appellant.

No. CR 86 0194–PR.

Supreme Court of Arizona,
En Banc.

Nov. 26, 1986.

Reconsideration Denied Jan. 20, 1987.

Robert K. Corbin, Atty. Gen. by Gerald R. Grant, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by Terry J. Adams, Deputy Maricopa County Public Defender, Phoenix, for appellant.

HOLOHAN, Chief Justice

The superior court ordered the indictment against defendant James Robert Burrus dismissed with prejudice because the

speedy trial provision of the Interstate Agreement on Detainers Act ("IAD"), A.R.S. § 31–481, had been violated. The Court of Appeals reversed the order of dismissal. *State v. Burrus*, 151 Ariz. 572, 729 P.2d 926 (App.1986). We granted review only on the question of whether the defendant's return to federal custody before final disposition of the state matter violated the IAD.

The procedural path leading up to this appeal has produced a labyrinth of litigation. On May 15, 1979, Burrus was charged in Arizona with one count of fraudulent schemes and five counts of forgery. At the time he was charged, he was a fugitive from justice. Some time later, when Arizona authorities learned that Burrus had been taken into federal custody in Idaho and was awaiting sentencing, the State placed a detainer against him. In October 1980, Burrus was permanently placed in a federal prison in Colorado.

The State of Arizona took custody of Burrus on February 11, 1981, pursuant to the IAD. On May 22, 1981, the trial court dismissed the indictment against Burrus with prejudice, holding that the State had violated the speedy trial provisions of Rule 8.3(a) of the Arizona Rules of Criminal Procedure, 17 A.R.S. The next day, the State appealed the trial court's decision. Burrus was returned to federal custody on May 29 by order of the trial court.

On October 7, 1982, the Court of Appeals reversed the trial court's order of dismissal, reinstated the indictment, and remanded the case for trial. *State v. Burrus*, 134 Ariz. 251, 655 P.2d 371 (App.1982). Accordingly, the State initiated efforts to return Burrus to Arizona. In January 1983, Burrus filed a motion to dismiss the reinstated indictment, arguing that the State had violated the IAD by failing to try him before sending him back to federal custody. The trial court denied the motion on January 12, 1983, ruling that "the defendant invited his return to federal custody by filing the motion to dismiss which has been determined by the appellate court to be erroneously granted." We declined to take

jurisdiction in Burrus' special action challenging that ruling. *Burrus v. Derickson*, No. 16401–SA (February 16, 1983).

On May 24, 1983, the trial court again dismissed the indictment against Burrus with prejudice but on other grounds. The court held that Burrus had been transferred pursuant to Article III of the IAD and the State had failed to bring him to trial within the 180–day time limit of that article.

The State appealed the order of dismissal and Burrus cross-appealed from the trial court's January 12, 1983 order denying his motion to dismiss. During the pendency of the appeal, Burrus obtained an injunction from federal district court preventing the federal authorities from surrendering him to Arizona for trial because Arizona had violated the IAD by returning Burrus to the federal authorities prior to trial on the state charges. The Ninth Circuit affirmed the district court decision, *Burrus v. Turnbo*, 743 F.2d 693 (9th Cir.1984), and the federal government petitioned the United States Supreme Court for a writ of certiorari, which the Court granted. *Hijar v. Burrus*, — U.S. —, 106 S.Ct. 59, 88 L.Ed.2d 48 (1985). However, on September 27, 1985, Burrus was released from federal custody. Therefore, on December 9, 1985, the Supreme Court vacated the judgment of the Circuit Court on the grounds it had been rendered moot by Burrus' release. *Hijar v. Burrus*, — U.S. —, 106 S.Ct. 562, 88 L.Ed.2d 548 (1985).

■ The Arizona Court of Appeals, in the meantime, had held its proceedings in abeyance pending the outcome of the federal case. Upon being advised of the decision of the Supreme Court, the Court of Appeals proceeded to address the issues before it. First, the court ruled that in Burrus' original trial proceedings, the 180–day time limit of Article III of the IAD was tolled by the continuance which the trial court had granted to Burrus to allow more time for pre-trial discovery. Thus, the State had not violated the speedy trial provision of the IAD. We agree with this

portion of the opinion of the Court of Appeals.

██ The Court of Appeals next addressed Burrus' contention in the cross-appeal that once he was returned to federal custody without having had a trial in Arizona, Article IV(e) of the IAD requires that the Arizona indictment against him be dismissed. The court ruled that because Burrus' return to federal custody was based upon an erroneous order of the trial court, the time limit for the State's appeal was tolled and the State is not now barred from seeking Burrus' return to Arizona. We disagree with the reasoning of the Court of Appeals supporting its holding that premature return to federal custody does not require that the state indictment be dismissed.

Article IV(e) of the IAD states:

If trial is not had on any indictment, information or complaint contemplated hereby prior to the prisoner's being returned to the original place of imprisonment pursuant to article V(e) hereof, such indictment, information or complaint shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice.

A.R.S. § 31–481.[1] This provision carries out the stated purpose of the IAD of removing the "uncertainties which obstruct programs of prisoner treatment and rehabilitation." A.R.S. § 31–481 at Article I; *see also United States v. Ford,* 550 F.2d 732, 739–40 (2d Cir.1977), *aff'd,* 436 U.S. 340, 98 S.Ct. 1834, 56 L.Ed.2d 329 (1978). Considering both the express purpose of the statute and its plain language, courts have dismissed numerous actions due to violations of Article IV(e). *See, e.g., United States v. Schrum,* 638 F.2d 214, 215 (10th Cir.1981) (dismissal required by IAD

where state prisoner taken for pretrial proceeding in federal court but not tried before being returned to state prison the same day); *United States v. Thompson,* 562 F.2d 232, 234 (3d Cir.1977) (same), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978); *United States v. Cyphers,* 556 F.2d 630, 635 (2d Cir.1977) (shuttling prisoner from state prison to federal prison and back again two years prior to trial violated Article IV(e)), *cert. denied,* 436 U.S. 950, 98 S.Ct. 2858, 56 L.Ed.2d 792 (1978); *United States v. Sorrell,* 413 F.Supp. 138 (E.D.Pa.1976) (violation where defendant was removed for arraignment but was returned without being tried), *aff'd,* 562 F.2d 227 (3d Cir.1977), *cert. denied,* 436 U.S. 949, 98 S.Ct. 2858, 56 L.Ed.2d 793 (1978).

██ However, the rights granted by the IAD can be waived by the defendant. *See, e.g., United States v. Palmer,* 574 F.2d 164, 167 (3d Cir.) (defendant waived Article V(e) rights by pleading guilty), *cert. denied,* 437 U.S. 907, 98 S.Ct. 3097, 57 L.Ed.2d 1138 (1978). "A defendant waives the protections of the IAD's anti-shuttling provisions when he requests the transfer before final disposition of the outstanding charges." *United States v. Black,* 609 F.2d 1330, 1334 (9th Cir.1979), *cert. denied,* 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980); *see also, United States v. Ford,* 550 F.2d at 742. There is no requirement that such a waiver be made "knowingly or intelligently" because the protections of the IAD are not founded on constitutional rights or on the preservation of a fair trial. *Black,* 609 F.2d at 1334. Thus, the defendant's request for transfer is enough by itself to constitute a waiver. *Id., see also Gray v. Benson,* 608 F.2d 825, 826–27 (10th Cir.1979) (defendant waived IAD rights by requesting transfer to obtain medical treat-

---

1. The IAD was adopted to provide a uniform means of transferring prisoners from the state where they are currently imprisoned to a state where an indictment is pending. There are two possible procedures to effectuate the transfer of a prisoner under the IAD: 1) prisoner initiated transfers (Article III of the Act) and 2) receiving state initiated transfers (Article IV of the Act). In deciding the speedy trial issue, the Court of

Appeals applied Article III of the IAD. Burrus' cross-appeal claimed a violation of Article IV of the IAD. Any remaining confusion about whether this case falls under Article III or Article IV of the IAD is irrelevant in our decision of the issue before us, because Article III(d) contains a provision virtually identical to the provision in Article IV(e) cited above.

ment); *United States v. Scallion,* 548 F.2d 1168, 1170 (5th Cir.1977) (defendant estopped from raising Article IV(e) claim where he requested return for parole hearing), *cert. denied,* 436 U.S. 943, 98 S.Ct. 2843, 56 L.Ed.2d 784 (1978).

 In the instant case Burrus waived his Article IV(e) rights. On May 8, 1981, Burrus filed a Motion for Order to Compel Release with the Maricopa County Superior Court. The express purpose of the motion was to request a transfer back to federal custody. In the motion, Burrus stated:

> ... I am in dire need of more meaningful access to legal research material, that I am led to believe is available at the Florence Detention Center. As a result of my removal to this jurisdiction I have missed two (2) college quarters (the Winter quarter I was enrolled in, and the Spring quarter that commenced after my arrival in Arizona) and if I am returned to federal custody I'll be able to better coordinate my enrollment in future college quarters. I am in need of surgery for a double hernia that the Bureau of Prisons is prepared to make available to me, but I have postponed having the surgery done in order to avoid the interruption of a speedy disposition of the untried charges underlying the aforementioned detainer. Again, I feel I could better coordinate the scheduling of surgery, upon completion of my trial in this jurisdiction, if I am returned to the custody of the Bureau of Prisons at Florence. From within the Bureau of Prisons I would have access to my Counselor, Case Manager, Records Officer, Classification Committee, occasional use of the federal watts line, greater freedom of movement, exercise, more meaningful administrative remedy procedures, and sunshine, etc., etc.

Burrus' request to be returned to federal custody constituted a waiver of his Article IV(e) right under the IAD to have trial on the state charges before being returned to the original place of imprisonment. It does not matter whether Burrus knew that he was waiving that right when he made the request. *See Black,* 609 F.2d at 1334. Accordingly, we agree with the Court of Appeals that Burrus' return to federal custody did not prohibit his return to Arizona for continued prosecution and that the State is not prevented from trying him on the original charges. We, however, base our decision on the defendant's waiver of his Article IV(e) rights.

The opinion of the Court of Appeals is modified by the views expressed in this opinion; the order of dismissal by the superior court is reversed, and the case is remanded to the superior court for proceedings consistent with this opinion.

GORDON, V.C.J., and HAYS, CAMERON and FELDMAN, JJ.