819 P.2d 909

**STATE of Arizona, Appellee,**

v.

**Steven Richard SCHAAF, Appellant.**

**No. CR–89–0346–AP.**

Supreme Court of Arizona,
En Banc.

Oct. 8, 1991.

As Corrected Oct. 16, 1991.

Grant Woods, Atty. Gen., Crane McClennen, Asst. Atty. Gen., Phoenix, Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

John C. Williams, Prescott, for appellant.

## OPINION

GORDON, Chief Justice.

Steven Richard Schaaf (defendant) appeals from his conviction and death sentence for one count of first degree murder. We have jurisdiction of this automatic appeal pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. §§ 13–4031, –4033, and –4035. We affirm the conviction but remand for resentencing.

## ISSUES

On appeal, defendant raises the following issues: (1) Whether defendant's rights to a speedy trial were violated; (2) Whether defendant was deprived of his right to counsel or self-representation; (3) Whether the trial court erred in death-qualifying the jury; (4) Whether the trial court erred when it allowed the state to call a defense expert witness as its own witness; (5) Whether the trial judge improperly commented on defendant's failure to testify; (6) Whether the trial court sentenced defendant on a count of which he had been acquitted and failed to sentence him on a count for which he had been convicted; (7) Whether the trial court erred when it refused to continue the sentencing hearing to permit the Arizona Capital Representation Project to present mitigation evidence; (8) Whether the trial court erred in not according greater weight to the evidence offered as mitigation; (9) Whether the trial court erred in finding an aggravating factor of a prior violent crime conviction when defendant was convicted of a non-violent crime under Nevada law; and (10) Whether defendant is entitled to a resentencing hearing if the trial court erred in finding that defendant's prior convictions constitute an aggravating factor. We have consolidated several of defendant's issues and have rearranged them in chronological order according to the proceedings below.

## FACTS

On the evening of June 3, 1986, Dale Douin (Dale) and Gerri Clark (Gerri) travelled west on Interstate 10 from Tucson toward Phoenix. After experiencing trouble with their truck, they pulled into the Sacaton rest area to check the oil. While there, defendant approached them and offered assistance. Dale gave defendant ten dollars to purchase some oil for the truck. Defendant left, returned a short while later, and stated he could not find an open service station.

Defendant and Dale then left in defendant's truck in a second attempt to locate an open station. Gerri remained at the rest area and fell asleep in the couple's truck. Approximately one hour later defendant returned to the rest area and told Gerri that Dale was waiting at a gas station and wanted defendant to take her there. Gerri agreed and got into defendant's truck.

While travelling west on the interstate, defendant's truck began overheating. When he stopped to fill the radiator with water, defendant produced a gun and accosted Gerri. He bound her wrists and ankles with wire and forced her to lie on the truck's floor board. Defendant then drew a knife and, while driving toward Phoenix, forced her to perform fellatio on him.

After reaching Phoenix, defendant exited the interstate and pulled into a service sta-

tion to add more water to his truck. While defendant went to fill his water jugs, Gerri, still bound with wire, hopped out of the truck and escaped to safety. Service station attendant Jay Lambert approached defendant, but defendant pointed a gun at him and drove away.

Later that morning, Dale's body was discovered in the desert near Interstate 10. He had been shot once in the back of the head with a 45-caliber automatic weapon. His wallet, containing approximately $200, was missing.

On September 8, 1986, Las Vegas authorities notified the Maricopa County Sheriff's Office that a man matching the assailant's description was being held in that city. Two days later, Gerri identified the man being held as the person who had assaulted her. Defendant's fingerprints matched those found on Dale's vehicle and on the water jugs left behind at the service station.

Defendant was indicted on the following charges:

| | |
|---|---|
| Count I | Kidnapping of Dale |
| Count II | Armed robbery of Dale |
| Count III | First degree murder of Dale |
| (either by premeditation or by felony-murder) | |
| Count IV | Kidnapping of Gerri |
| Count V | Armed robbery of Gerri |
| Count VI | Aggravated assault of Gerri · |
| Count VII | Sexual assault of Gerri |
| Count VIII | Aggravated assault of Jay Lambert |

The State alleged that defendant had prior convictions, that he committed the offenses while on probation from Florida, and that the offenses were of a dangerous nature.

After the State rested, the trial court granted defendant's motion for directed verdicts of acquittal on Counts I and II, as well as on the felony murder portion of Count III. The jury acquitted defendant of the remaining armed robbery charge, but convicted him on all the other charges and found them to be of a dangerous nature. Defendant admitted prior convictions on two charges of attempted murder using a deadly weapon.

At the aggravation hearing, the trial court found that the State had proved the existence of two statutory aggravating circumstances: (1) conviction of another crime for which death or a life term was imposa-

ble, A.R.S. § 13-703(F)(1); and (2) prior convictions of two felonies involving the use or threat of violence, A.R.S. § 13-703(F)(2). The court also found that defendant had been on probation when he committed the instant offenses. At the mitigation hearing, the court concluded that the defendant had not proved any of the statutory mitigating circumstances and that none of the other mitigation evidence offered was sufficiently substantial to call for leniency.

The trial court sentenced defendant to death for the murder and to consecutive life terms for the remaining convictions. It also ordered him to pay $8000 in restitution and $500 to the Victim Compensation Fund. The court advised defendant that an automatic appeal of the death sentence would be filed, but that he would have to file a timely notice of appeal with regard to the other counts. Defendant also received a written explanation of his appeal rights. The record contains no notice of appeal on the other convictions. Therefore, our review of this case is limited to the evidence supporting the conviction and death sentence for the first degree murder.

## DISCUSSION

## CONVICTION ISSUES

### RIGHT TO A SPEEDY TRIAL

Defendant contends that the trial court violated his right to a speedy trial under the sixth amendment to the United States Constitution, article 2, § 24 of the Arizona Constitution, rule 8.3 of the Arizona Rules of Criminal Procedure, and the Interstate Agreement on Detainers (IAD). Defendant bases his claim on the trial court allowing his first attorney to withdraw. He argues that the court erred when it excluded the six days that defendant was without counsel after his first attorney, Greg Martin, withdrew. If the court had not excluded those days, defendant claims, the time limit for a speedy trial would have been violated by four days.

### a. Constitutional right to a speedy trial

■ Defendant failed to raise in the trial court either federal or state constitutional claims that his right to a speedy trial was violated. Because he did not raise these claims in the trial court, they are waived absent fundamental error. *See, e.g., State v. Lavers,* 814 P.2d 333, 341–42 (1991); *State v. Thomas,* 130 Ariz. 432, 435, 636 P.2d 1214, 1217 (1981). "Before we may engage in a fundamental error analysis, however, we must first find that the trial court committed some error." *Lavers,* 814 P.2d at 341–42 (citing *Thomas,* 130 Ariz. at 436, 636 P.2d at 1218; *State v. King,* 158 Ariz. 419, 424, 763 P.2d 239, 244 (1988)). For the reasons stated below, we find no error.

A criminal defendant's right to a speedy trial is protected by article 2, § 24 of the Arizona Constitution, and the sixth amendment to the United States Constitution. Generally, the right to a speedy trial is waived unless asserted promptly. *State v. Adair,* 106 Ariz. 58, 60, 470 P.2d 671, 673 (1970). The speedy trial provisions of the Arizona Constitution and the United States Constitution do not provide any time limit within which a trial must be held. They simply state that criminal defendants have the right to a speedy and public trial. U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial"); Ariz. Const. art. 2, § 24 ("In criminal prosecutions, the accused shall have . . . a speedy public trial").

■ The standards used under the federal constitution to determine whether a delay is sufficient to reverse a conviction are: "1) length of the delay, 2) reason for the delay, 3) defendant's assertion of the right, and 4) prejudice caused the defendant." *State v. Zuck,* 134 Ariz. 509, 514–15, 658 P.2d 162, 167–68 (1982) (citing *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)). The least important factor is the length of the delay and the most important, the prejudicial effect. *Id.; State v. Leslie,* 147 Ariz. 38, 44, 708 P.2d 719, 725 (1985); *State v. Parker,* 116 Ariz. 3, 8, 567 P.2d 319, 324 (1977). We find none of the factors sufficient to reverse defendant's conviction.

First, defendant complains that had the court not excluded the six days, the trial date violated the rule 8 time limit by four days. If defendant were correct, and the six days should not have been excluded, we still would not find a four day delay to be prejudicial. There was no showing that attorney Martin actually would have been prepared to try the case on October 19. Second, the reason for the delay was that the court found that extraordinary circumstances existed because defendant's attorney, Martin, had been appointed a judge pro-tem in superior court approximately one week before trial and could no longer represent defendant. Third, defendant did not assert his constitutional right to a speedy trial during trial. And finally, defendant simply has shown no prejudice from a delay granted by the court in order to make sure that defendant was represented by counsel.

Thus, we conclude that defendant's constitutional right to a speedy trial was not violated.

### b. Rule 8

The time limits for a speedy trial are set out in rule 8, Ariz.R.Crim.P., 17 A.R.S. Rule 8.3(a) states that "[w]ithin 90 days after the defendant has been delivered into the temporary custody of the appropriate authority of this state, he shall be brought to trial." Rule 8.5(b) provides that a court may grant a continuance "only upon a showing that extraordinary circumstances exist and that delay is indispensable to the interests of justice." By imposing explicit time standards, the rule 8 requirements restrict the state more than either the state or federal constitutions. *State ex rel. Berger v. Superior Court,* 111 Ariz. 335, 339, 529 P.2d 686, 690 (1974).

■ The court initially found that extraordinary circumstances existed to extend the trial date when defendant's court-appointed attorney, Martin, was appointed judge pro-tem in superior court approximately one week prior to the trial date.

The court found this appointment effectively deprived defendant of his right to counsel and of his right to a fair trial, thus creating extraordinary circumstances. (R.T. November 16, 1987, at 13.) Therefore, the court excluded the six days between the removal of Martin and the appointment of Steve Rempe from the Public Defender's Office. *See* rule 8.4(d) ("[d]elays resulting from continuances in accordance with Rule 8.5" are excluded). The exclusion of the six days prevented a violation of the ninety-day rule.

■ Defendant asserts, however, that the court should not have allowed Martin to withdraw and, therefore, extraordinary circumstances did not exist.[1] We disagree. Absence of key court personnel has been found to be extraordinary circumstances for purposes of rule 8. *See e.g., State v. Lukezic*, 143 Ariz. 60, 70, 691 P.2d 1088, 1098 (1984) (illness or incapacity of trial judge justified exclusion of reasonable time from speedy trial period where accused asserts no demonstrable prejudice); *Carter v. State*, 54 Md.App. 220, 230–31, 458 A.2d 480, 485 (1983) (unavoidable absence of a factor necessary for a fair trial—such as counsel, judge, jury or essential evidence—would constitute good cause for trial postponement). Although defendant did not wish the court to allow the withdrawal of his attorney approximately one week before trial, we cannot say that the court abused its discretion in allowing such withdrawal and finding extraordinary circumstances. Once the attorney was allowed to withdraw, it was reasonable to assume that defendant could not be prepared to represent himself effectively one week prior to trial. Although we have a strong interest in the prompt and expeditious handling of criminal trials, *see generally* rule 8, Ariz. R.Crim.P., 17 A.R.S., this interest cannot outweigh defendant's constitutional right to be represented by counsel. *State v. Conner*, 163 Ariz. 97, 104, 786 P.2d 948, 955 (1990) (defendant entitled to assistance of counsel at every critical stage of criminal proceedings); *Kunzler v. Superior*

*Court*, 154 Ariz. 568, 569, 744 P.2d 669, 670 (1987) (person is always entitled to assistance of an attorney, whether in custody or not); rule 6.1(a), Ariz.R.Crim.P., 17 A.R.S.

Although defendant does not object on appeal to continuances granted other than the one allowed in excluding the six days between the removal of attorney Martin and the appointment of attorney Rempe, we note that he expressly waived his rule 8 claims on more than one occasion during the year and a half before his case actually came to trial. During a pretrial conference in March, 1988, defendant stated in response to a question from the court that "Rule 8 was actually waived last month." (R.T. March 28, 1988, at 26.) During another pretrial conference a month later, defendant stated that "I've already waived Rule 8 completely." (R.T. April 27, 1988, at 16.) Therefore, the record shows that defendant waived his rule 8 claims. Even if we did not find such a waiver existed, however, the court properly found extraordinary circumstances existed to continue the trial date when defendant's counsel informed the court of his judge pro-tem appointment and defendant was left without representation.

### c. Interstate Agreement on Detainers

■ Defendant's final speedy trial claim is that the trial court violated the time limits established by the IAD. Both the United States and the State of Arizona adopted the IAD in order "to provide a uniform means of transferring prisoners from the state where they are currently imprisoned (the "sending state") to a state where an indictment is pending (the "receiving state")." *State v. Burrus*, 151 Ariz. 572, 573, 729 P.2d 926, 927 (App. 1986), *aff'd in pertinent part*, 151 Ariz. 581, 729 P.2d 935 (1986).

Under the IAD, two methods may be used to transfer prisoners: (1) the prisoner may request final disposition of the indictment under Article III of the IAD, or (2)

---

1. Because defendant later raises this claim as a deprivation of his right to counsel, we address it in that portion of the opinion.

the receiving state may initiate the transfer under Article IV of the IAD. Article III states that the person "shall be brought to trial within one hundred eighty days" from the date of receipt of the prisoner's request. A.R.S. § 31–481; *Burrus,* 151 Ariz. at 575, 729 P.2d at 929. Article IV states that "trial shall be commenced within one hundred twenty days" from the date the prisoner arrives in the receiving state.[2] A.R.S. § 31–481; *Burrus,* 151 Ariz. at 575, 729 P.2d at 929.

In this case, the Article III time limits were not violated when the court granted a continuance for good cause. Under the IAD, the court "may grant any necessary or reasonable continuance" if good cause is shown. A.R.S. § 31–481. Defendant requested final disposition of his indictment on April 22, 1987. One hundred eighty days from that date was October 19, 1987, the date the court set for a firm trial date. On October 19, the court found extraordinary circumstances existed to continue the trial date, despite defendant's desire for a speedy trial.

■ The good cause standard under the IAD is a lesser standard than the extraordinary circumstances standard under rule 8. *See* comment rule 8.5(b), Ariz.R.Crim.P., 17 A.R.S. Therefore, a finding of extraordinary circumstances under rule 8 necessarily encompasses a finding of good cause under the IAD. Because we found extraordinary circumstances to grant a continuance and to exclude the six days under rule 8, it follows that good cause also existed to grant the continuance and exclude the six days under the IAD. Thus, we find no violation of defendant's right to a speedy trial under the IAD.

## RIGHT TO SELF–REPRESENTATION AND RIGHT TO COUNSEL

Defendant argues that both his right to self-representation and his right to counsel were violated. He bases this argument on a series of events that occurred prior to his actual trial. We must describe the sequence of events in order to completely understand defendant's argument.

Attorney Greg Martin was appointed to represent defendant in July, 1987. In October, 1987, Martin filed a motion to withdraw because he had been appointed judge pro-tem in superior court. The court granted the motion and ordered the Maricopa County Public Defender's Office to represent defendant. Defendant opposed Martin's withdrawal, as well as the appointment of public defender, Steve Rempe.

In March, 1988, defendant filed a motion to dismiss the Public Defender's Office, but the court denied the motion. (R.T. March 28, 1988 at 24). Defendant then filed a motion requesting that he be permitted to represent himself and that he receive advisory counsel from any place other than the Public Defender's Office. Initially, the court permitted the Public Defender's Office to withdraw and announced that it would appoint a contract attorney to assist defendant. Approximately one week later, during a hearing to determine counsel, the court reversed itself and ruled that defendant was incompetent to represent himself because of legal inability and lack of training. It then denied defendant's motion to represent himself and ordered the Public Defender's Office to continue to represent him. (Minute Entry, May 10, 1988 at 19).

The State then filed a motion for reconsideration, arguing that the court's denial of defendant's right to represent himself was in error. In July, 1988, a new judge granted the State's motion, permitted defendant to represent himself, and appointed Rempe as advisory counsel. The court removed Rempe as advisory counsel when he did not appear at a pretrial conference in November, 1988, and ordered the Public Defender's Office to assign the case to another attorney. (Minute Entry, November 10, 1988 at 36). Defendant then filed a motion requesting that Rempe be retained as his advisory counsel, arguing that while

2. The one hundred twenty day rule of Article IV is not at issue here because the October 19, 1987 original trial date was well within the one hundred twenty day time limit. Defendant arrived in Arizona on July 16, 1987. One hundred twenty days from July 16 was November 13, 1987.

he did not wish Rempe to represent him, he did not object to Rempe as advisory counsel. Before the court ruled on this motion, the Public Defender's Office filed a motion to withdraw because of a conflict of interest. The court granted this motion and appointed contract attorney Gary Shriver as defendant's advisory counsel. Defendant continued to represent himself until approximately one week before trial, at which time he filed a motion to withdraw his *pro per* status and have his advisory counsel take over the case. The court granted the motion and attorney Shriver represented defendant throughout the trial.

### a. *Right to counsel*

It is well-settled that "a defendant is constitutionally entitled to representation by counsel or to proceed without counsel if he so chooses." *State v. LaGrand*, 152 Ariz. 483, 486, 733 P.2d 1066, 1069 (1987), *cert. denied*, 484 U.S. 872, 108 S.Ct. 206, 98 L.Ed.2d 157 (1987) (citations omitted); U.S. Const. amend. VI. Defendant argues that the court violated his sixth amendment right to counsel in several ways.

■ First, he argues that his right to counsel was violated when Martin withdrew as counsel and the court appointed another attorney to represent him. Although defendant is entitled to representation, he is not constitutionally entitled to any particular lawyer, but simply to a *competent* lawyer. *LaGrand*, 152 Ariz. at 486, 733 P.2d at 1069. When a qualified member of the State Bar is assigned to represent defendant and acts diligently on his behalf, the constitutional right to counsel is fulfilled. *State v. DeLuna*, 110 Ariz. 497, 500–01, 520 P.2d 1121, 1124–25 (1974); *Applications of Oppenheimer*, 95 Ariz. 292, 299, 389 P.2d 696, 701–02 (1964), *cert. denied*, 377 U.S. 948, 84 S.Ct. 1359, 12 L.Ed.2d 311 (1964). Thus, the change of counsel alone did not violate defendant's constitutional right to counsel.

■ Second, defendant maintains that Martin's motion to withdraw violated the requirements of rule 6.3(c) of the Arizona Rules of Criminal Procedure. Rule 6.3(c) states:

c. Duty Upon Withdrawal. No attorney shall be permitted to withdraw after a case has been set for trial except upon motion accompanied by the name and address of another attorney, together with a signed statement by the substituting attorney that he is advised of the trial date and will be prepared for trial. Appointed counsel may withdraw after the arraignment on the grounds of his client's ineligibility only upon a showing that withdrawal will not disrupt the orderly processing of the case.

Rule 6.3(c), Ariz.R.Crim.P., 17 A.R.S.

■ Defendant is correct that the motion did not designate a substituting attorney, nor did it contain a signed statement that the new lawyer would be prepared for trial. We note, however, that the comments to rule 6.3(c) indicate that it incorporates the Uniform Rules of Practice of the Superior Court of Arizona XII(c). Rule XII(c)(2)(C) of those rules states that:

[n]o attorney shall be permitted to withdraw as attorney of record after an action has been set for trial, (i) unless there shall be endorsed upon the application therefor either the signature of an attorney stating that that attorney is advised of the trial date and will be prepared for trial or the signature of the client stating that the client is advised of the trial date and has made suitable arrangements to be prepared for trial, *or (ii) unless the court is satisfied for good cause shown that the attorney should be permitted to withdraw.*

(Emphasis added.) Rule XII(c)(2)(C), Super.Ct. Uniform Prac.R., 17B A.R.S.

We do not believe that this technical violation of rule 6.3(c) merits reversal. The Arizona Constitution provides that "[n]o cause shall be reversed for technical error in pleadings or proceedings when upon the whole case it shall appear that substantial justice has been done." Ariz. Const. art. 6, § 27; *see also State v. Brooks*, 103 Ariz. 472, 474, 445 P.2d 831, 833 (1968) (the test is whether error was so prejudicial to defendant's rights as to require reversal); *Shaughnessy v. State*, 43 Ariz. 445, 449, 32 P.2d 337, 341 (1934) (technicalities in plead-

ings or proceedings that do not prejudice defendant's rights should be ignored).

■ In this case, the court found good cause for attorney Martin to withdraw because he had been appointed a judge pro-tem in superior court and would be assuming those responsibilities in a short time. (R.T. October 19, 1987 at 3). If the court is satisfied that good cause was shown for withdrawal, the technical flaws in the motion may be overlooked if substantial justice is done and the error is not so prejudicial to defendant's rights that reversal is required. We do not find the court's granting of the motion to have prejudiced defendant. Defendant has presented no evidence that Martin was ready to go to trial any sooner than substitute counsel. Nor is there any basis to believe that Martin's withdrawal caused any significant delay in the trial. We therefore find that the court had good cause to grant Martin's motion to withdraw because he had been appointed judge pro-tem and that defendant was not prejudiced by the withdrawal. Thus, we hold that defendant's right to counsel was not violated by Martin's motion to withdraw as counsel and the court's granting of the motion.

### b. *Right to Self-Representation*

■ Defendant claims that the court prevented him from representing himself when it temporarily denied his motion making that request, thereby constituting reversible error. We find no error. We have long recognized a defendant's right to represent himself. *Faretta v. California*, 422 U.S. 806, 95 S.Ct. 2525, 2530, 45 L.Ed.2d 562 (1975). Even assuming the trial court initially erred in denying defendant's right to represent himself, the court corrected the error and granted defendant's motion. The court granted the motion nearly a year before the trial actually took place and also appointed advisory counsel to assist defendant. Thus, we find no violation of the right of self-representation because defendant was able to represent himself for nearly eleven months before withdrawing his *pro per* status and allowing his adviso-

ry counsel to represent him during the trial.

### JURY DEATH–QUALIFICATION DURING VOIR DIRE

■ Defendant argues that no rational reason exists to death-qualify the jury during voir dire because jurors in Arizona are not permitted to make sentencing decisions. We recently upheld our long-standing position that questioning prospective jurors about their position regarding capital punishment is permissible to determine whether they would be unable to perform their duties because of their bias regarding the death penalty. *State v. White*, 815 P.2d 869, 879 (1991); *State v. Martinez–Villareal*, 145 Ariz. 441, 449, 702 P.2d 670, 678 (1985), *cert. denied*, 474 U.S. 975, 106 S.Ct. 339, 88 L.Ed.2d 324 (1985). In Arizona, the jurors must determine guilt or innocence in a death penalty case. The court alone is responsible for imposing the sentence. Even though the jurors do not make sentencing decisions, death-qualifying of jurors during voir dire is appropriate "to determine whether those views would prevent or substantially impair the performance of the juror's duties to decide the case in accordance with the court's instructions and the juror's oath." *Martinez–Villareal*, 145 Ariz. at 449, 702 P.2d at 678.

In this case, the court excused several prospective jurors because they expressed their discomfort with the possibility of a death sentence in the event of conviction. These individuals expressed reservations about whether they could consider the case impartially at trial. In order for a trial judge to ensure that a panel of fair and impartial jurors is selected, it is not only permissible, but imperative, that the judge disqualify jurors claiming an inability to fulfill their duties. Therefore, we conclude that the judge properly conducted voir dire and excluded prospective jurors based on their responses to questions regarding the death penalty.

### STATE CALLING DEFENSE EXPERT WITNESS

■ Defendant contends that the trial court erred in permitting the State to call

defendant's expert witness to testify for the prosecution. We believe that defendant has waived this issue on appeal.

First, in his notice of defenses and witnesses, defendant listed Joe Garcia, a fingerprint expert. (R.O.A. at 70b.) The court granted defendant's motion to call Garcia as an expert witness. (Minute Entry, November 4, 1988 at 35a.) During the omnibus hearing concerning the prosecution's discovery, the State indicated it intended to interview Garcia regarding his fingerprint analysis and might call him during its case-in-chief to testify about his analysis of the evidence. When the court asked defendant if he objected, he replied, "No problem." (R.T. May 15, 1989 at 42–43.) Rule 16.1, Ariz.R.Crim.P., 17 A.R.S., establishes the rules governing procedure between arraignment and trial. Rule 16.-1(c) states that "[a]ny motion, defense, objection, or request not timely raised under Rule 16.1(b) shall be precluded, unless the basis therefor was not then known, and by the exercise of reasonable diligence could not then have been known, and the party raises it promptly upon learning of it." The rule also requires that such objections be made no later than twenty days before the trial date. In failing to make a timely objection, defendant has waived his right to make the objection on appeal.

■ Second, when defendant finally raised an objection during trial, it was on the basis that Garcia's testimony would be cumulative evidence. Defendant now argues, for the first time on appeal, that allowing the State to call Garcia somehow implicates work product protected under Rule 15.4(b)(1), Ariz.R.Crim.P., 17 A.R.S. We will not consider an evidentiary theory when it is advanced for the first time on appeal. See *State v. Serna*, 163 Ariz. 260, 267, 787 P.2d 1056, 1063 (1990), *post-conviction relief denied*, 167 Ariz. 373, 807 P.2d 1109 (1991), *petition for cert. filed*, July 10, 1991 (defendant shifted position on appeal regarding admissibility of certain evidence; new theory will not be considered); *State v. Neal*, 143 Ariz. 93, 100, 692 P.2d 272, 279 (1984) (evidence admitted over objection at trial cannot be objected to

on new grounds on appeal); *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982) (evidence objected to on one ground and admitted, waives other grounds for objection not specified). Thus, we conclude that defendant has waived his right to raise this issue on appeal.

■ Even if defendant had not waived this right, we find it to be within the trial court's broad discretion to determine whether an expert witness will be required to testify, even if it was the other party who initially retained the expert witness. *See, e.g., Granger v. Wisner*, 134 Ariz. 377, 380, 656 P.2d 1238, 1241 (1982) (doctor-patient privilege does not prevent a party from calling an adversary's expert to testify and examining the expert about his or her opinions and the observations, knowledge, information, and theories on which the opinions are based). We do not find the trial court abused its discretion in this case in allowing the State to call defendant's fingerprint expert.

### JUDGE'S COMMENT ON DEFENDANT'S FAILURE TO TESTIFY

■ Defendant argues that the trial court improperly commented on defendant's failure to testify at trial. After the State rested its case, the following conversation took place in front of the jury:

THE COURT: The defense now has the opportunity to present testimony if the defense wishes.

Does the defendant wish to present a case?

MR. SHRIVER: Your Honor, we would rest at this time.

THE COURT: All right. Ladies and gentlemen, the evidence portion of the case has concluded. It's obviously concluded a little more rapidly than we had anticipated.

(R.T. June 21, 1989 at 38–39). Defendant argues that the sentence "It's obviously concluded a little more rapidly than we had anticipated" impermissibly indicated to the jury that the judge was surprised that defendant was not going to present a case, thus prejudicing the jury against defendant. We disagree.

Defendant relies on *State v. Mata*, where we reaffirmed our adherence to the principle that "[i]t is constitutionally impermissible for a prosecutor or a trial judge to comment on a defendant's failure to testify." *See* 125 Ariz. 233, 237, 609 P.2d 48, 52 (1980), *cert. denied*, 449 U.S. 938, 101 S.Ct. 338, 66 L.Ed.2d 161 (1980) (citing *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965)); *see also* A.R.S. § 13–117(B) (defendant's failure to testify on own behalf shall not prejudice him or be used against him during trial or proceedings). In *Mata*, while preparing for a weekend recess and prior to the State resting its case, the court stated "you haven't heard anything from the defendant...." *Id.* We held that the remark was inadvertent and immediately corrected. Thus, even though the remark was inappropriate, it did not constitute reversible error.

We do not find the judge's comment in this case to be impermissible like the comment made by the judge in *Mata*. A comment is impermissible only if "the language used was manifestly intended or was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." *State v. Fuller*, 143 Ariz. 571, 575, 694 P.2d 1185, 1189 (1985) (quoting *United States v. Soulard*, 730 F.2d 1292, 1306 (9th Cir.1984)). In this case, the jurors had been told during voir dire that the case might last through the second week of July. Because the trial concluded approximately three weeks earlier than expected, it is unreasonable to interpret the judge's remark as a comment on defendant's failure to testify. Moreover, a jury would not naturally and necessarily interpret the statement in such a manner. Rather, it was merely a statement that the case was concluding earlier than anticipated. Thus, we do not find the comment to be improper because it is not related to defendant's failure to testify.

## SENTENCING ISSUES

### CONVICTION OF PRIOR FELONY INVOLVING VIOLENCE

■ The trial court found as an aggravating circumstance supporting imposition of the death penalty the fact that defendant had been convicted in Nevada of two counts of attempted murder with a deadly weapon. Defendant contends that the trial court erred in finding that attempted murder, as defined by the Nevada Revised Statutes, is a conviction involving the use or threat of violence on another person as required by A.R.S. § 13–703(F)(2). He argues that attempted murder is a non-violent crime under Nevada law. The State argues that it proved beyond a reasonable doubt that the prior convictions involved the use or threat of violence through the defendant's admission of his prior convictions, by documentary evidence of the convictions, and by testimony from one of the shooting victims.

Section 13–703(F)(2) provides an aggravating circumstance if "[t]he defendant was previously convicted of a felony in the United States involving the use or threat of violence on another person." This court has held, however, that in order to qualify as an aggravating circumstance under § 13–703(F)(2), the *statutory definition* of the prior conviction must involve violence or the threat of violence on another person. *State v. Fierro*, 166 Ariz. 539, 549, 804 P.2d 72, 82 (1990); *State v. Hinchey*, 165 Ariz. 432, 437, 799 P.2d 352, 357 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1589, 113 L.Ed.2d 653 (1991); *State v. Lopez*, 163 Ariz. 108, 114, 786 P.2d 959, 965 (1990); *State v. Romanosky*, 162 Ariz. 217, 227, 782 P.2d 693, 703 (1989); *State v. Gillies*, 135 Ariz. 500, 511, 662 P.2d 1007, 1018 (1983), *cert. denied*, 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985), *appeal after remand*, 142 Ariz. 564, 691 P.2d 655 (1984). Although the State has asked us to overrule *Gillies* and its progeny, we refuse to do so and reaffirm this rule because it guarantees that a criminal defendant's due process rights will not be violated. *Gillies*, 135 Ariz. at 511, 662 P.2d at 1018.

■ In order to use the prior conviction for sentencing purposes, the State must show that the particular crime can be perpetrated only with the use or threat of

violence. The court then may consider only the statute that defendant is charged with violating; it may not consider other evidence, or bring in witnesses, to establish the violence element.[3] *Hinchey,* 165 Ariz. at 437, 799 P.2d at 357. In *Gillies,* for example, we held that the State may not bring in the victim of the prior crime, long after its commission, to establish the element of violence. 135 Ariz. at 511, 662 P.2d at 1018. If "the defendant may commit or be convicted of the crime without the use or threat of violence, the prior conviction cannot qualify as a statutory aggravating circumstance." *Fierro,* 166 Ariz. at 549, 804 P.2d at 82 (citations omitted). The rationale for retaining this rule has not changed. The statutory definition must involve violence or the threat of violence because this court will not "allow what is, in effect, a second trial on defendant's prior conviction to establish the existence of an A.R.S. § 13–703(F)(2) aggravating circumstance." *Gillies,* 135 Ariz. at 511, 662 P.2d at 1018.

The trial court found two aggravating circumstances: (1) the attempted murders in Nevada and (2) a Florida robbery conviction for which the sentence of life imprisonment or death was imposable. Because the attempted murder convictions occurred in Nevada, we must look to the Nevada statute's language to determine whether the statutory definition of attempted murder involves violence or the threat of violence on another person. In Nevada, attempt is "[a]n act done with intent to commit a crime, and tending but failing to accomplish it...." Nev.Rev.Stat. 193.330. This language does not state that attempt necessarily includes violence or the threat of violence on another person. Under the words of this statute, one may attempt to commit a violent crime without engaging in the use or threat of violence.

Because the State did not prove that the prior convictions for attempted murder involve, by statutory definition, violence or the threat of violence upon another person, the convictions may not be used as an

aggravating circumstance under A.R.S. § 13–703(F)(2). Likewise, the court may not consider the facts underlying the conviction, nor may it consider the victim's testimony in determining whether the crime had elements of violence.

The State, however, argues that even if this court finds that the Nevada convictions do not satisfy § 13–703(F)(2), the trial court *could* have used other Florida convictions to satisfy the *Gillies* requirement. The trial court, however, did not use these other convictions to support the finding that defendant had been convicted of offenses involving the use or threat of violence. The record does not indicate why the trial court did not consider other prior convictions that could satisfy § 13–703(F)(2) as aggravating circumstances. We decline to speculate as to why the trial court did not use these other convictions in aggravation. Although we independently review the aggravating and mitigating circumstances found by the trial court, we will not find an aggravating circumstance where the trial court has not done so.

We conclude that the statutory definition of attempted murder in Nevada does not involve violence or the threat of violence on another person, and that the trial court therefore erred when it found the convictions satisfied § 13–703(F)(2).

## RESENTENCING

█ Defendant argues that if this court finds that the Nevada conviction does not satisfy § 13–703(F)(2), his death sentence must be set aside and the case remanded for resentencing. He asserts that if one of the two statutory aggravating circumstances found by the trial court is set aside, we must remand for resentencing. We agree.

In *State v. Lopez,* the trial court found two statutory aggravating circumstances. 163 Ariz. 108, 786 P.2d 959 (1990). As in this case, we set aside one of the two aggravating circumstances because it did

---

**3.** We note that the aggravation hearing in this case occurred several years after *Gillies* was

decided.

not qualify as a statutory aggravating circumstance under § 13–703(F)(2). We remanded for resentencing because "we [could] not know and [could] not ascertain what result would have obtained but for that finding." 163 Ariz. at 116, 786 P.2d at 967. The same holds true in this case.

At the mitigation hearing, defense counsel offered a number of non-statutory items for the court to consider: 1) defendant was young and immature at the time of his first offense in Florida; 2) defendant is under four 20–year sentences for his Nevada convictions; thus, if these sentences are served consecutively to his sentences for his Arizona convictions, defendant would never be eligible for release; 3) defendant does not present a threat of violence to other inmates or jail personnel; 4) defendant's involvement in serious criminal offenses seems to be related to his consumption of alcohol; 5) defendant had a growth removed from his temple; and 6) defendant suffers from acute asthma. At sentencing, the court made a general finding that the evidence offered in mitigation was not sufficiently substantial to call for leniency and to overcome the two aggravating circumstances, although it did not comment on the various items individually.

Because one of the two statutory aggravating circumstances found by the trial court must be set aside, we remand for resentencing on the murder count because we do not know and cannot ascertain whether the court would have found the mitigating circumstances sufficient to overcome the single remaining aggravating circumstance. We find *Lopez* persuasive and conclude that the murder count must be remanded for resentencing.

Because we find that defendant is entitled to a new sentencing hearing, we need not address his remaining issues regarding any court errors relating to mitigation evidence.

## CONCLUSION

Accordingly, because one of two statutory aggravating circumstances must be set aside, we remand for a new hearing and sentence on the murder count. In the event defendant again receives the death penalty, another appeal is mandated. *See* Rule 31.2(b), Ariz.R.Crim.P., 17 A.R.S.

We have searched the record for fundamental error and find none. The judgment of conviction is affirmed. The death sentence on the first degree murder conviction is vacated and the cause remanded for resentencing in accordance with this opinion.

FELDMAN, V.C.J., and CAMERON, MOELLER and CORCORAN, JJ., concur.