NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

JUWAN L. DOBBINS, *Appellant*.

No. 1 CA-CR 22-0569

FILED 08-29-2024

Appeal from the Superior Court in Maricopa County
No. CR2021-001967-001
The Honorable Chuck Whitehead, Judge

**AFFIRMED**

COUNSEL

Law Office of Stephen M. Johnson Inc., Phoenix
By Stephen M. Johnson
*Counsel for Appellant*

Arizona Attorney General's Office, Phoenix
By Alice M. Jones
*Counsel for Appellee*

---

**MEMORANDUM DECISION**

Judge Angela K. Paton delivered the decision of the Court, in which Presiding Judge Michael J. Brown joined and Judge Andrew M. Jacobs joined in part. Judge Andrew M. Jacobs also filed a separate special concurrence.

---

**P A T O N**, Judge:

¶1 Juwan L. Dobbins appeals his convictions and sentences for sexual assault, sexual abuse, and kidnapping, arguing the superior court violated his speedy trial rights guaranteed under the Arizona and United States Constitutions and Arizona Rule of Criminal Procedure ("Rule") 8. Dobbins also contends the court erred when it did not sua sponte strike a juror for cause based on the juror's statements during voir dire. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2 On August 23, 2021, the State indicted Dobbins on ten counts of sexual assault, three counts of kidnapping, and one count of sexual abuse. The counts involved three victims on three dates between November 2017 and December 2019.

¶3 The superior court initially scheduled Dobbins' trial for December 2021. Defense counsel requested a continuance due to a trial conflict, and the court reset trial for March 1, 2022. The court excluded the 77-day continuance period from the speedy trial time calculation, as Rule 8 requires. *See* Ariz. R. Crim. P. 8.2(a)(1), 8.4(a)(5) (extraordinary circumstances). Dobbins waived the applicable time limits.

¶4 Defense counsel requested a second continuance, asking for two additional weeks to prepare for trial. Counsel asked the court not to waive time because the last day was 45 days away from the scheduled trial date. The court granted defense counsel's second request and did not extend the last day set for trial. The court reset trial for March 17, 2022.

¶5 About one week before trial, the State moved for a continuance because the assigned prosecutor had just accepted a new job. The State informed the court that because another prosecutor who was familiar with the case had a trial conflict, it would need to assign a new

prosecutor. The State requested a 90-day continuance, given the newly-assigned prosecutor's trial schedule, the voluminous materials associated with the case, defense counsel's outstanding request to interview 24 witnesses, and other issues awaiting defense counsel's response and needing resolution before trial.

¶6            At the final pretrial management conference on March 17, 2022, Dobbins objected to the State's continuance request, claiming the State did not previously inform him about the assigned prosecutor's new job. The State responded that it moved to continue the trial one day after the assigned prosecutor found out she was leaving the office and, given that she had applied for the new position nearly one year prior, she had received "no forewarning" about the job offer.

¶7            The superior court granted the State's motion and initially continued the case from March 17 to March 31, 2022. After a new prosecutor was appointed, the court continued the case again and reset the trial to May 3, 2022, excluding 40 days from the speedy trial time calculation.

¶8            About two weeks later, the State filed a notice of trial conflicts, stating that another matter had priority over Dobbins' case based on the age of the case and the amount of time the defendant had been in custody. Dobbins objected to any further delay, asserting he had been in custody for nearly 27 months.

¶9            Based on its trial conflict, the State requested a 60-day continuance because jury selection in the older case would begin the same day that Dobbins' trial was set to start. In support of its request, the State emphasized the case's complexity and noted defense counsel still had 17 interviews to conduct. During a status conference, the court and parties discussed the parties' trial conflicts and the court reset trial for May 12, 2022. About two weeks later, the superior court granted the State's motion to continue trial, finding extraordinary circumstances justified the delay, and reset trial to July 14, 2022, excluding 63 days from the speedy trial time calculation.

¶10          During jury selection, the State wanted to speak to Juror 58 in private regarding her "history as a rape victim." In her individual voir dire, Juror 58 explained she was a victim of a crime nearly 30 years ago. The State asked whether there was anything about her personal experience that would impact how she would view the evidence in this case, to which the juror replied, "[i]t's been 30 years and so I have . . . dealt with that." The

State also asked whether she would be able to set aside her experience and be fair to both sides in the case, to which she replied, "I believe I am."

¶11        Defense counsel asked Juror 58 whether she would be "comfortable moving forward knowing [her] own personal history at this point[,]" to which Juror 58 responded that she had "come full circle with what happened . . . so . . . I believe that I'm at peace with it" and could "deal with it[.]"  When asked if she would be able to judge someone's testimony, Juror 58 acknowledged that although she "never received justice on it," and "had to seek [her] own way of dealing with it," she was "maybe even a stronger person" after the experience.  She noted that she "had to learn to deal with things," "accept [her] experiences as they were" and "to forgive."

¶12        In reference to service on the jury, Juror 58 said, "I think it will be difficult, and I'll probably have my moments."  But when defense counsel asked whether she could approach the case with an open mind, "knowing that maybe something happened but maybe something didn't happen[,]" the juror responded, "Yes."  Defense counsel also asked whether it would be a relief not to be selected, to which she replied, "If I were in a courtroom . . . which I have the opportunity to be now, and study the facts . . . it might be my opportunity to deal with that on a fair, level ground."

¶13        Neither party objected to Juror 58, and she was empaneled. After a 17-day trial, the jury deliberated for about 12 hours over the course of three days.  The jury found Dobbins guilty of three counts of sexual assault, one count of kidnapping, and one count of sexual abuse.  The jury was unable to reach a verdict on two counts of kidnapping and seven counts of sexual assault.

¶14        The superior court sentenced Dobbins to 31.5 years' imprisonment and ordered him to register as a sex offender.  Dobbins timely appealed.  We have jurisdiction pursuant to Article 6, Section 9 of the Arizona Constitution, and Arizona Revised Statutes ("A.R.S.") Sections 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

## DISCUSSION

I.      **The superior court did not abuse its discretion by granting the State's continuance requests.**

¶15        Dobbins argues that by granting the State's continuance requests, which he objected to, the superior court violated his right to a speedy trial under the Arizona and United States Constitutions and under Rule 8.  We review the superior court's decision to grant a continuance for

an abuse of discretion. *State v. Vasko*, 193 Ariz. 142, 144, ¶ 8 (App. 1998). We will not reverse the superior court's decision unless we find a clear abuse of discretion and "resulting prejudice." *Id.* Determining "[w]hether [the superior] court abused its discretion and prejudice resulted depends upon the facts of each case." *State v. Wassenaar*, 215 Ariz. 565, 571, ¶ 16 (App. 2007).

### A. Dobbins has failed to show that the superior court violated his constitutional speedy trial rights.

**¶16** A defendant has a constitutional right to a speedy trial. *See* U.S. Const. amend. VI; Ariz. Const. art. 2, § 24. We look at four factors to determine whether a speedy trial violation occurred: "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Barker v. Wingo*, 407 U.S. 514, 530–33 (1972); *State v. Schaaf*, 169 Ariz. 323, 327 (1991). Length of delay is the least important factor, and prejudice is the most important. *Schaaf*, 169 Ariz. at 327. A defendant establishes prejudice by showing the delay caused oppressive pretrial incarceration, anxiety, concern, or impairment of his defense. *See Barker*, 407 U.S. at 532.

**¶17** Because the length of delay between Dobbins' indictment and the trial was about ten months, we must examine each of the *Barker* factors.[1] *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (post-indictment delay approaching a year is unreasonable enough to trigger additional analysis); *see also State v. Soto*, 117 Ariz. 345, 348 (1977) (noting a nine-month delay is enough to trigger examination of other factors). Dobbins, however, only briefly argues length of delay by mentioning the length of his pretrial incarceration. Although the delay was meaningful because Dobbins remained in custody for 117 additional days due to the State's two requested continuances, defense counsel requested the first two continuances, which delayed trial for 93 days. Further, Dobbins has not provided evidence showing his pretrial incarceration was oppressive, he suffered anxiety from the delay, or the delay impaired his defense. We conclude the delay was not prejudicial.

**¶18** As for the reason for delay, the superior court found extraordinary circumstances existed for the delays, caused by both parties' continuance requests. Arizona courts have found the absence of counsel, trial conflicts, and case complexity to be extraordinary circumstances

---

[1] A grand jury indicted Dobbins on August 23, 2021, and his trial did not begin until July 20, 2022.

justifying a trial delay. *See, e.g.*, *Schaaf*, 169 Ariz. at 328 (absence of "key court personnel"); *State v. Mosley*, 1 CA-CR 15-0588, 2017 WL 2686459, at *5, ¶ 26 (Ariz. App. June 22, 2017) (mem. decision) (trial conflict); *Snyder v. Donato*, 211 Ariz. 117, 120, ¶ 14 (App. 2005) (case complexity). Here, the assigned prosecutor's acceptance of another job caused the State's first delay because it prevented the State from trying the case as planned. A trial conflict, the case's complexity—namely, multiple victims and charges at issue—and outstanding witness interviews not yet conducted by the defense were reasons supporting the State's second continuance request. Defense counsel's trial conflict and need for extended trial preparation also caused delay. Because extraordinary circumstances justified the delays, and Dobbins offered no evidence showing how he was prejudiced, we conclude the multiple continuances did not cause prejudice to his defense. Thus, his constitutional speedy trial rights were not violated.

### B. Dobbins has failed to show that the superior court violated his speedy trial rights under Rule 8.

**¶19** Dobbins contends the superior court violated his Rule 8 speedy trial rights. Rule 8 is "more restrictive of the state than the Sixth Amendment" because it sets a time frame. *State v. Tucker*, 133 Ariz. 304, 308 (1982). Rule 8 requires that defendants in custody be tried "[n]o later than 150 days after arraignment." Ariz. R. Crim. P. 8.2(a)(1). Time periods are excluded from a Rule 8 calculation if the court grants a continuance because "extraordinary circumstances exist, and that delay is indispensable to the interests of justice." Ariz. R. Crim. P. 8.5(b). The party requesting a continuance must show "extraordinary circumstances exist" and state the reasons justifying the continuance with "specificity." *State v. VanWinkle*, 230 Ariz. 387, 390, ¶ 8 (2012). The superior court must state its reasons for granting a continuance. *Id.*

**¶20** After defense counsel moved for continuances due to a trial conflict and the need for additional trial preparation, the superior court found that extraordinary circumstances warranted extending the trial date. The court excluded 77 days from the speedy trial calculation for that continuance. And as for the State's two continuance motions, the court found extraordinary circumstances existed and thus warranted extending the trial date. The court first continued the case and excluded 40 days from the calculation because the State assigned a new prosecutor. The court then continued the case and excluded 63 days from the calculation due to case complexity and outstanding witness interviews.

¶21            Extraordinary circumstances justified the delays. And because the superior court properly excluded days from the speedy trial time calculation, Dobbins' Rule 8 speedy trial rights were not violated. *See* Ariz. R. Crim. P. 8.4(a)(5), 8.5(b). The court did not abuse its discretion by granting the continuances.

## II.    Dobbins has not proven that the superior court's failure to sua sponte strike Juror 58 for cause was fundamental error.

¶22            Dobbins contends the superior court erred by not sua sponte striking Juror 58 for cause, relying on Rule 18.4(b). Because Dobbins failed to object in the superior court, he bears the burden of proving fundamental, prejudicial error. *See State v. Henderson*, 210 Ariz. 561, 567, ¶¶ 19–20 (2005). To establish fundamental error, Dobbins must show "that (1) the error went to the foundation of the case, (2) the error took from the defendant a right essential to his defense, or (3) the error was so egregious that he could not possibly have received a fair trial." *State v. Escalante*, 245 Ariz. 135, 142, ¶ 21 (2018). If a defendant establishes fundamental error, he must also show prejudice. *Id.*

¶23            A criminal defendant has a constitutional right to a fair and impartial jury. *See* Ariz. Const. art. 2, § 24; *see also* U.S. Const. amend. VI. We defer to the superior court on jury selection issues because the court is "in the best position to 'assess the demeanor of the [jury panel], and of the individuals who compose it.'" *State v. Naranjo*, 234 Ariz. 233, 239, ¶ 12 (2014) (citation omitted).

¶24            "The [superior] court, on motion or on its own, must excuse a prospective juror . . . from service in the case if there is a reasonable ground to believe that the juror . . . cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). "If a juror is willing to put aside his opinions and base his decision solely upon the evidence, he may serve." *State v. Johnson*, 247 Ariz. 166, 198, ¶ 113 (2019) (citation omitted).

¶25            During jury selection, both parties interviewed Juror 58 and she discussed her experience as a crime victim about 30 years ago. She initially stated the experience could make it difficult to serve on the jury. In *State v. Bible*, our supreme court held that the court's failure to strike jurors who would "find it difficult" to be objective was not fundamental error because the jurors said they could "sit fairly and impartially and base their verdict solely on the evidence presented." 175 Ariz. 549, 573 (1993). Similarly, here, Juror 58 stated multiple times when responding to both

parties' questioning, that she could set her personal experience aside, keep an open mind, and be fair and impartial.

**¶26** Because Juror 58's responses did not provide a reasonable ground to believe she was unable to render a fair and impartial verdict, the superior court did not commit error—let alone fundamental error—by failing to sua sponte strike her from the jury panel.

## CONCLUSION

**¶27** We affirm Dobbins' convictions and sentences.

**J A C O B S, J.**, specially concurring:

**¶28** I concur in Paragraphs 1-21 of the panel's decision. I write separately to explain why I concur in affirming Dobbins' convictions and sentences, albeit through reasoning that differs from the panel's with respect to the empaneling of Juror 58.

**¶29** This appeal presents difficult questions we must face squarely after the abolition of peremptory challenges. First, what is "a reasonable ground to believe that [a] juror cannot render a fair and impartial verdict" under Arizona Rule of Criminal Procedure 18.4(b)? Second, where a reasonable ground exists, must the superior court strike the juror even where the defendant fails to move to strike them, as the plain language of Rule 18.4(b) suggests? Third (answering yes to the second question), does defendant's failure to move to strike the juror require us to review his challenge to the superior court's failure to strike her only for fundamental error, even though that renders the superior court's failure to strike the juror functionally unreviewable, because our review is then as if the rule only required the juror to be struck on defendant's motion?

**¶30** Dobbins argues the superior court erred when it did not sua sponte strike Juror 58 for cause after statements she made during voir dire. Returning to the three questions in Paragraph 29, I first respectfully part from my colleagues and conclude there was a reasonable ground for the superior court to believe Juror 58 could not render a fair and impartial verdict. Second, Rule 18.4(b)'s plain language thus required the superior court to strike Juror 58. But as to the third question, because *State v. Cruz*, 218 Ariz. 149, 159 ¶ 31 (2008) requires us to review Dobbins' argument

concerning Juror 58 for fundamental error, and there is none here, I concur in affirming Dobbins' convictions and sentences.

## FACTS AND PROCEDURAL HISTORY

**¶31** Because my view of what is a reasonable ground differs from the panel's, I begin by briefly reviewing the facts giving rise to that difference. After filling out her juror questionnaire, Juror 58 asked to speak privately with the court and parties to discuss her "history as a rape victim." The parties and the court conducted individual voir dire of Juror 58. Juror 58 explained she had been a victim of a sexual assault nearly 30 years ago. When asked by the State whether there was anything about her personal experience that would impact how she would view the evidence in this case, Juror 58 replied, "It's been 30 years and so I have . . . dealt with that." The State also asked her whether she would be able to set that aside and be fair to both sides in this case, and Juror 58 replied, "I believe I am."

**¶32** Defense counsel's questioning of Juror 58 elicited responses suggesting she would have difficulty serving on the jury. She stated she came "full circle with what happened," which was "a pretty rough time" that "changed [her] life," though she was now "at peace with it." Juror 58 also acknowledged "I've never received justice on it [her sexual assault]" and questioned her ability to serve, stating, "I'm not going to lie. I think it will be difficult, and I'll probably have my moments." She explained her sexual assault, inflicted by someone she knew, left her "angry," and wondered if her assailant was never brought to justice was because he was the nephew of a police chief or official in the small town where they lived. Juror 58 implied she had not fully processed her experience as a sexual assault survivor, stating when asked if she would be relieved not to serve that serving might be essentially cathartic or therapeutic: "I thought that was maybe something that maybe finally would help me, actually, I'm not sure." Juror 58 also made conclusory assertions of fairness. Neither party objected to Juror 58, nor did the court strike her for cause. She was empaneled and sworn.

## DISCUSSION

### *State v. Cruz* **Requires Us to Hold That the Court Did Not Err When It Did Not Strike Juror 58 For Cause, Despite Having a Reasonable Basis to Believe She Could Not Render a Fair and Impartial Verdict.**

**¶33** We review for fundamental error Dobbins' challenge to the court not sua sponte striking Juror 58 for cause where Dobbins did not

move to strike her. *State v. Cruz*, 218 Ariz. 149, 159 ¶ 31 (2008). Dobbins bears the burden to show fundamental error occurred and prejudiced him. *State v. Henderson*, 210 Ariz. 561, 567 ¶¶ 19-20 (2005). A fundamental error is one that goes to the foundation of the case and takes away a right essential to the defense, so the defendant could not have received a fair trial. *Id.* at 568 ¶ 24.

### A. There Was a Reasonable Ground to Believe Juror 58 Could Not Render a Fair and Impartial Verdict.

¶34 Rule 18.4(b) of the Arizona Rules of Criminal Procedure addresses challenges for cause and requires superior courts to decide whether "there is a reasonable ground to believe . . . the juror . . . cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). If the answer is yes, then "[t]he court, [whether] on motion or on its own, must excuse" that juror. *Id.*

¶35 Here, the record furnishes reasonable bases to believe Juror 58 could not render a fair and impartial verdict, but also that she could. We begin by reviewing the reasonable basis to believe she could not. As a foundational matter, Juror 58 was a victim of sexual assault. That of course does not disqualify her from being fair and impartial in this trial concerning sexual assault, sexual abuse, and kidnapping. But she also stressed, saying, "I'm not going to lie," that serving on this jury would be "difficult, and I'll probably have my moments." Adding to the weight of her self-confessed difficulty serving, Juror 58 candidly shared that she was "angry" about the sexual assault upon her, and wondered if her assailant was not brought to justice because he was a relative of an influential law officer. Juror 58 signaled continuing difficulty with processing her experience as a sexual assault survivor, speculating that jury service might furnish her with needed emotional assistance with it: "I thought that was maybe something that maybe finally would help me, actually, I'm not sure." All of this taken together provides a reasonable basis to believe Juror 58 could not render a fair and impartial verdict.

¶36 There are also bases in the record to conclude Juror 58 could render a fair and impartial verdict. Juror 58 seemed to aver that she had processed, if not gotten over, her experience as a sexual assault victim, stating, "[i]t's been 30 years and so I have . . . dealt with that." She agreed with the State's moderately leading question asking if she could set her assault aside and be fair to both sides in this case. Juror 58 told defense counsel she had come "full circle with what happened" and was "at peace with it." She stated she felt she could judge someone else's testimony,

"probably even more so than maybe the next person."  Asked if she could approach this case understanding that "maybe something happened but maybe something didn't happen," Juror 58 said yes.  Juror 58 said she would "study the facts" of the case, if selected "on a fair, a level ground." And the parties did not move to strike her, nor did the court sua sponte strike her, which tends to corroborate that there was a reasonable basis to think she could render a fair and impartial verdict.

¶37  When we return to Rule 18.4(b)'s plain language, however, it does not ask courts whether the better view is that Juror 58 could render a fair and impartial verdict.  It asks a very different question:  whether there is "a reasonable basis" to think she could not.  That language is compatible with situations such as that at bar, where there are "reasonable grounds" both for and against the juror's capability to render a fair and impartial verdict.  The rule has a very simple answer – the court "must" strike any such juror.  *Id.*  As such, it was an abuse of discretion not to strike Juror 58. If we were writing on a blank slate and reviewing the superior court's compliance with Rule 18.4(b) for abuse of discretion, it would be necessary to reverse and order a new trial.  But we are not.

**B.** *State v. Cruz* **Treats Dobbins' Failure to Move to Strike Juror 58 as a Waiver of His Challenge to the Court's Choice Not to Strike Her Sua Sponte, Requiring Fundamental Error Review.**

¶38  Despite a reasonable ground to believe Juror 58 could not render a fair and impartial verdict, we must affirm, given our supreme court's resolution of a comparable issue in *State v. Cruz*.  *See* 218 Ariz. 149, 159 ¶ 31 (2008).  There, as here, a defendant challenged a superior court's failure to remove a juror for cause.  *Id.* at ¶ 27.  Our supreme court treated the defendant's failure to move to strike a juror as waiver of his objection to the superior court's failure to strike the juror sua sponte, thus requiring review only for fundamental error.  *Id.* at ¶ 31 ("Cruz did not move to strike Juror 193 for cause.  We therefore review for fundamental error.").

¶39  *Cruz* guides us not only as to the standard of fundamental error but how to apply it.  There, as here, the juror in question made claims of impartiality.  *See Cruz*, 218 Ariz. at 159 ¶ 31.  There, as here, there were indications of potential bias.  In *Cruz*, the questioned juror was married to a former police officer where the trial concerned the murder of a police officer, and the juror in question said in voir dire that the defendant "probably would not want me" sitting on his jury.  *Id.* at 159 ¶ 30.  On that record, our supreme court found no fundamental error in her sitting on the

jury despite arguable indications of prejudice against that defendant. *Id.* at 159 ¶ 31. There is thus no fundamental error from the seating of Juror 58, because even though there is a reasonable ground to believe she could not render a fair verdict, there are reasonable grounds to say she could. As such, and consistent with *Cruz*'s use of fundamental error review, we cannot say that Juror 58's participation in Dobbins' trial made a fair trial impossible.

¶40 Yet that is not the end of our analysis. *Cruz* contains an important qualifier. Our supreme court explained in *Cruz* that there was no fundamental error *by explaining that Cruz should have stricken the juror in question using his peremptory challenges*:

> We see no fundamental error. When questioned, she stated that she could be fair and impartial to both sides. Cruz's concerns that sympathies based on her husband's former job might influence her decisions exemplify why a defendant is given peremptory strikes: to remove a qualified juror whom the defendant does not wish to have on the jury.

218 Ariz. at 159 ¶ 31.

¶41 This in turn raises the question as to whether our supreme court's January 1, 2022 abolition of peremptory strikes would lead it to resolve this case differently from how it resolved *Cruz*. There are two ways to read *Cruz* on this point.

¶42 Here is the first: because the plain language of Rule 18.4(b), though modestly different in 2022, carried the same meaning in 2008, the superior court was required then, as now, to strike a juror where there was a reasonable ground to believe she could not render a fair and impartial verdict. Despite that plain language, the 2008 Arizona Supreme Court saw waiver of the challenge to the seating of the challenged juror in Cruz's failure not only to move to strike her for cause but also his failure to use a peremptory challenge to strike her. The supreme court's point that "Cruz's concerns . . . exemplify why a defendant is given peremptory strikes" can be read as driving the court's analysis in *Cruz*. *See* 218 Ariz. at 159 ¶ 31. Because our supreme court has now abolished peremptories, so Dobbins could not have peremptorily struck Juror 58, one might not read *Cruz* to ascribe waiver to Dobbins. One might then hold the superior court more strictly to the plain language of Rule 18.4(b)'s command that it "must" strike any juror as to whom there is a reasonable ground to believe they could not render a fair and impartial verdict.

**¶43**        Here is the second:  because Rule 18.4(b) meant the same thing then as now, Dobbins' failure to move to strike Juror 58 is every bit the waiver Cruz's failure to use a peremptory strike on Juror 193 was in his case.  One might then affirm on the basis of waiver, as in *Cruz*.

**¶44**        Rule 18.4(b)'s plain language makes me question that second way to read *Cruz*.  It reduces review of the superior court's omission to strike a juror presenting a "reasonable ground" to asking whether the defendant also moved to strike them based on the "reasonable ground" a defendant identified.  If there is no motion, the appealing defendant loses, making toothless the superior court's obligation to sua sponte strike potentially biased jurors and precluding appellate review of that failure that would otherwise ensue.  However – and despite the plain language of Rule 18.4(b) – this is not our call.  We are an intermediate court of appeals, and there is a controlling decision of our supreme court on point.  We must apply Paragraph 31 of *Cruz*, which requires only fundamental error analysis of this issue.  And I agree with my colleagues that there is no fundamental error in seating Juror 58.  *State v. Bible*, 175 Ariz. 549, 573 (1993).

**¶45**        The question remains as to whether the abolition of peremptories might lead to a different outcome before our supreme court.  Practitioners and judges in our state have engaged in serious discussions and debates about whether and how the abolition of peremptory challenges would affect the superior court's decisional process, and appellate review of it.  As our supreme court weighed petitions to reform jury selection, some called for a "for-cause light" standard for strikes to accompany the abolition of peremptories.  Others litigated the proposition (which we rejected) that the abolition of peremptories should lead to a more searching review of decisions to strike. *See State v. Colorado*, 256 Ariz. 97 ¶ 23 (App. 2023).  This case presents a significant variation on that theme, as *Cruz*'s reference to peremptory challenges calls into question how Rule 18.4(b)'s plain language should be applied going forward, and in particular, whether the rule means what it says.  Answering that question would benefit Arizona criminal law.[2]

---

[2] As a final note, because voir dire changed with the 2022 amendments to Arizona's criminal and civil rules, I also differ with the panel's invocation in Paragraph 24 of *State v. Johnson*, 247 Ariz. 166, 198 ¶ 113 (2019), to the extent that might encourage courts or practitioners to rely on eliciting conclusory averrals from jurors that despite their previously expressed

## CONCLUSION

**¶46** Applying *Cruz* to facts I conclude provide a "reasonable ground to believe" Juror 58 could "not render a fair and impartial verdict," I concur with my colleagues in the result because I see no fundamental error in the court's failure to strike Juror 58 for cause.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV

---

opinions and dispositions, they can set aside their biases and serve. As the panel acknowledges, our rules impose a duty to strike every juror for whom there is a "reasonable ground to believe that the juror . . . cannot render a fair and impartial verdict." Ariz. R. Crim. P. 18.4(b). And since the 2022 amendments that abolished peremptory challenges, deciding whether to strike a prospective juror requires the court to look beyond those averrals to consider the "totality of a prospective juror's conduct and answers given during voir dire as stated on the record…" Ariz. R. Crim. P. 18.5(h).

It would repeal these rules if, no matter how clearly the record demonstrated a "reasonable ground" to question a juror's impartiality, the court would have to accept a juror's final, contrary averral. Beyond that, the comment to Rule 18.5(f) warns courts against "attempting to rehabilitate prospective jurors by asking leading, conclusory questions that encourage prospective jurors to affirm that they can set aside their opinions and neutrally apply the law." Ariz. R. Crim. P. 18.5(f), cmt. (2022). Practitioners should mind these two rules and that comment: despite *Johnson* and cases like it, getting a juror to say they can "be fair and impartial" by any conclusory or leading means is not a get-out-of-Rule 18.4(b)-free card.