NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

DEONTE MAURICE LUCKETT, *Appellant.*

No. 1 CA-CR 24-0649

FILED 11-13-2025

Appeal from the Superior Court in Maricopa County
No. CR2024-117474-001
The Honorable Joshua Yost, Judge *Pro Tempore*

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Joshua C. Smith, Rebecca Jones
*Counsel for Appellee*

Maricopa County Public Defender's Office, Phoenix
By Kristen Reller
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Presiding Judge D. Steven Williams delivered the Court's decision, in which Judge Andrew M. Jacobs and Judge Michael S. Catlett joined.

---

**W I L L I A M S**, Judge:

¶1        Deonte Maurice Luckett appeals his convictions and sentences for aggravated assault and disorderly conduct. For the following reasons, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        Late one night, Luckett and his girlfriend argued. The two physically tangled and Luckett wielded a kitchen knife. Several children were present, some sleeping and some awake. The oldest of the girlfriend's children intervened to protect his mother before running and locking himself in a bedroom. Luckett took chase, breaking down the bedroom door before things finally de-escalated.

¶3        After a six-day trial, a jury convicted Luckett of one count of aggravated assault with a deadly weapon, a class 3 felony, and two counts of disorderly conduct—one a class 6 felony and the other a class 1 misdemeanor. The jury also found three aggravating circumstances proven for the class 3 felony and one aggravating circumstance proven for the class 6 felony. The trial court found Luckett had five prior felony convictions and sentenced him to a presumptive term of 3.75 years' imprisonment on the class 6 felony, a concurrent, aggravated term of 13 years' imprisonment on the class 3 felony, and time served (180 days) on the misdemeanor.

¶4        Luckett timely appealed, arguing the trial court erred when it refused to grant his motions for a change in counsel. We have jurisdiction under Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1), 13-4031, and -4033(A)(1).

**DISCUSSION**

¶5        Luckett challenges the trial court's denial of his motions to change counsel. Asserting the relationship between he and his appointed attorney was irretrievably broken, Luckett contends the court failed to conduct the requisite inquiry to meaningfully consider the basis for his

2

motions. He also argues the court "improperly conditioned his right to counsel on a waiver of his speedy trial rights," "creating an unconstitutional dilemma."

**¶6**  We review a trial court's denial of a request for new counsel for abuse of discretion. *State v. Riley*, 248 Ariz. 154, 167, ¶ 7 (2020). "We will affirm the trial court's ruling if the result was legally correct for any reason." *State v. Carlson*, 237 Ariz. 381, 387, ¶ 7 (2015) (internal quotation marks and citation omitted).

**¶7**  In a pre-prepared form filed July 5, 2024, Luckett moved to change counsel without providing any factual basis for his request. In a handwritten letter filed July 9, 2024, Luckett again moved to change counsel, stating:

> I, Deonte Maurice Luckett, hereby request that [defense counsel] be withdrawn as my counsel of record, and that [blank space] be substituted as my attorney in all future proceedings in the trial court.

> I Deonte M. Luckett [am] writing this memorandum in order to seek change of counsel for ineffective counsel of [defense counsel]. He has not been keeping me inform[ed] of any Motions or Evidence pertaining to my case. Has not barter[ed] for a better plea or giv[en] me any legal advice that would aid me in said case. Your Honor if you need any further Information I would be more than happy to say it formally in an oral argument[.] Thank you for your time and understanding[.]

**¶8**  At his next court appearance, a final trial management conference held on August 15, 2024, the trial court directly questioned Luckett about his motions to change counsel, asking him to further explain the reasons for his request. Luckett answered that his attorney failed to: (1) follow his instructions ("everything I ask my lawyer to do, he — he find[s] a reason to not do it"); (2) solicit his advice ("he didn't ask me [any] questions about how — how should it be litigated"); (3) timely communicate case developments to him ("he do[es]n't tell me [any]thing unless I ask him about it"); (4) speak with the witnesses he had identified; (5) withdraw from the case or provide a bar number, as he requested; and (6) mount a defense ("I asked him about my defense; would this work, this work. Up to until about a week ago, he told me that nothing that I brought to his attention would work."). Although the court noted that new counsel, upon

evaluating the facts of the case, also might not find a "reasonable basis" for a defense, Luckett maintained that new counsel would "probably do a better job."

**¶9**        When the trial court asked Luckett whether he understood that a change in counsel would necessarily cause a delay requiring him to waive objections to the timing of his trial, Luckett objected, stating he had filed his motions in a "timely" manner and would not forgo his right to a speedy trial because the court had delayed ruling on his requests. The court responded that the motions were not "filed in [the court] system" until mid-July and explained that if Luckett refused to waive his right to a speedy trial (last day September 23, 2024), the court would not appoint new counsel:

> Well if you don't waive your rights to a speedy trial, then I can't provide you with new counsel, because we have to make sure that your counsel is competent and available and ready to take your case to move forward.

**¶10**        Standing on his right to a speedy trial, Luckett asked the court to dismiss the case with prejudice, which the court refused: "[Y]ou either get new counsel and give that counsel the time to properly prepare, or you want to move to trial and you go with the counsel that you currently have." Presented with that choice, Luckett stated: "I'm afraid I'm going to have to go with the counsel that I have, but . . . I don't like it."

**¶11**        Later in the hearing, the prosecutor provided a *Donald* advisement, outlining on the record the parameters of the State's plea offer to Luckett, noting he had declined the offer, and it had since expired. After the prosecutor's recitation, Luckett complained that defense counsel had not explained the plea offer to him, prompting the court to ask whether Luckett would like to accept the plea as outlined by the State. Luckett expressed an interest in the plea and the court asked whether the prosecutor was willing to reopen the offer. At that point, defense counsel interjected, referring to his notes to recount multiple discussions with Luckett concerning the plea offer and Luckett's refusal to accept any plea requiring prison time: "[U]nless he receive[d] probation, he had no interest in taking a plea." Without denying or contradicting defense counsel's account, Luckett stated that defense counsel was "supposed to get a better plea deal." To that end, Luckett asked whether he could receive a better plea offer if he presented evidence of his employability. When the prosecutor responded that the State would not provide a more favorable offer, Luckett expressly rejected the plea, stating he did so "under duress" from his attorney. The court then asked Luckett whether he had any questions about

the plea offer and the possible sentences he faced. Luckett answered that he understood the potential sentences but remarked that if a jury found him guilty, "it'd be all because of my counsel." The court found Luckett knowingly, intelligently, and voluntarily rejected the State's plea offer and concluded the hearing.

¶12        The federal and Arizona constitutions guarantee a criminal defendant both the right to counsel and the right to a speedy trial. U.S. Const. amend. VI.; Ariz. Const. art. 2, § 24. To protect each of these fundamental rights, a court may not condition a defendant's exercise of one upon his relinquishment of the other. *See State v. Moody*, 192 Ariz. 505, 509, ¶¶ 22-23 (1998) (holding a court may not present a defendant with a choice that requires the relinquishment of a constitutional right and any "waiver" elicited from a defendant confronted with such a "constitutionally impermissible" choice is necessarily involuntary); *see also State v. Schaaf*, 169 Ariz. 323, 328 (1991) (explaining the "strong interest in the prompt and expeditious handling of criminal trials . . . cannot outweigh [the] constitutional right to be represented by counsel").

¶13        Neither the United States Constitution nor the Arizona Constitution provides "any time limit within which a trial must be held." *Schaaf*, 169 Ariz. at 327. Instead, Arizona Rule of Criminal Procedure 8 sets forth the time limits, requiring, as relevant here, the court to try every in-custody defendant "[n]o later than 150 days after arraignment." Ariz. R. Crim. P. 8.2(a)(1).

¶14        When a defendant requests a change of counsel shortly before trial, the right to counsel and the right to a speedy trial may come into tension, but rather than presenting the defendant with the "constitutionally offensive" choice of waiving one right to invoke the other, *Moody*, 192 Ariz. at 509, ¶¶ 22-23, the court must preserve both by excluding any necessary "[d]elays occasioned by or on behalf of the defendant" from "the computation of time limits," while affirming the defendant's right to a speedy trial. *State v. Aragon*, 221 Ariz. 88, 91, ¶ 7 (App. 2009) (explaining a court need not deny a defendant's request for a continuance "so he could be represented by his counsel of choice" out of "concern that any such continuance would violate" the right to a speedy trial, because any delay incurred on a defendant's behalf is excluded from the speedy trial calculus) (quoting Ariz. R. Crim. P. 8.4(a)(1)).

¶15        Here, the trial court *seemingly* presented Luckett with a "constitutionally offensive" choice—requiring him to either proceed to trial with his appointed counsel or forego his right to a speedy trial. Because we

5

may affirm a court's denial of a motion for change of counsel "on any basis in the record," *State v. Riley*, 248 Ariz. 154, 169, ¶ 21 (2020), we must determine whether Luckett's decision to exercise his right to a speedy trial, and thereby retain his appointed attorney, *actually* deprived him of his constitutional right to counsel.

**¶16**　　　　An indigent criminal defendant has a right to competent counsel, but "is not entitled to counsel of choice, or to a meaningful relationship with his or her attorney." *State v. Torres*, 208 Ariz. 340, 342, ¶ 6 (2004) (internal quotation marks and citation omitted). A complete breakdown in attorney-client communication or an irreconcilable conflict between a defendant and appointed counsel, however, violates a defendant's constitutional right to counsel. *Id.*

**¶17**　　　　When a defendant requests a change of counsel, the trial court must inquire regarding the basis for the request. *Id.* at 343, ¶ 7. "The nature of the inquiry will depend upon the nature of the defendant's request." *Id.* at ¶ 8. A formal hearing or evidentiary proceeding may not be necessary to address "generalized complaints about differences in strategy," but a court "must conduct a hearing" when a defendant sets forth "sufficiently specific, factually based allegations in support of his request for new counsel." *Id.* (internal quotation marks and citation omitted).

**¶18**　　　　"At such a hearing, the defendant bears the burden of demonstrating that he has a genuine irreconcilable conflict with his counsel or that there has been a total breakdown in communications." *Id.* "[T]o prove a total breakdown in communication, a defendant must put forth evidence of a severe and pervasive conflict with his attorney or evidence that he had such minimal contact with the attorney that meaningful communication was not possible." *State v. Paris-Sheldon*, 214 Ariz. 500, 505, ¶ 12 (App. 2007) (internal quotation marks and citation omitted). "A defendant must show more than personality conflicts or disagreements with counsel over trial strategy," and claims of "ineffective trial preparation and failure to communicate, when unsupported by the record, are generally characterized as disagreements over trial strategy." *Riley*, 248 Ariz. at 168, ¶ 13 (internal quotation marks and citation omitted). In evaluating a request for change of counsel, the trial court should consider whether an irreconcilable conflict exists, whether new counsel would face the same conflict, the timing of the motion, the inconvenience to witnesses, the time period already elapsed between the alleged offense and trial, the proclivity of the defendant to change counsel, and the quality of counsel. *Torres*, 208 Ariz. at 344, ¶ 15.

**¶19**         Luckett argues "[t]he trial court's handling of [his] motion for new counsel was legally insufficient," contending the court abdicated its "duty to conduct a meaningful inquiry." Contrary to this contention, the record reflects that the court conducted a *Torres* inquiry, inviting Luckett to fully explain, uninterrupted, the basis for his change of counsel request.

**¶20**         Prompted by the trial court, Luckett complained that his appointed attorney failed to follow his instructions, solicit his advice, and interview the witnesses he identified. These differences in strategy do not constitute an irreconcilable conflict compelling a change of counsel. *See Riley*, 248 Ariz. at 168, ¶ 15 (explaining complaints that an attorney has "failed to conduct any interviews" are "disagreements over trial strategy, which do not amount to irreconcilable differences"); *see also State v. Goudeau*, 239 Ariz. 421, 448, ¶ 84 (2016) (explaining that when a defendant's complaints relate to "strategic decisions," the trial court need not "elicit on-the-record responses from defense counsel"). Luckett also asserted that defense counsel failed to adequately communicate with him and share developments in the case, but Luckett's other statements to the court belied these claims. In listing his complaints, Luckett described repeatedly giving defense counsel instructions and proposing various defense theories, detailing continuing communications up to the week before the hearing. *See Riley*, 248 Ariz. at 169, ¶ 17 (explaining that a defendant's "knowledge of the status of his case" demonstrated his ongoing communications with counsel). In fact, when defense counsel refuted Luckett's assertion that counsel had failed to explain the State's plea offer to him, Luckett admitted that he had discussed the plea offer with counsel, reframing his claim from a communication breakdown to ineffective assistance of counsel—contending counsel should have negotiated a more favorable plea offer. Moreover, defense counsel told the court he had shared pertinent information and evidence with Luckett, such as the police incident report, and stated a retained investigator was also willing to review the case with Luckett. Luckett offered no rejoinder.

**¶21**         On this record, neither the scope of the hearing nor the nature of the trial court's inquiry was constitutionally insufficient. Luckett never suggested that either an evidentiary hearing or an ex parte hearing "was necessary to determine the source of the alleged conflict" or communication breakdown. *Riley*, 248 Ariz. at 169, ¶ 18; *see also State v. Gomez*, 231 Ariz. 219, 225-26, ¶ 29 (2012) ("A trial judge is not required to hold an evidentiary hearing on a motion for change of counsel if the motion fails to allege specific facts suggesting an irreconcilable conflict or a complete breakdown in communication, or if there is no indication that a hearing would elicit additional facts beyond those already before the court."). Having failed to

demonstrate an irreconcilable conflict or a complete breakdown in communications, Luckett did not present evidence sufficient to compel a change of counsel. *See Riley*, 248 Ariz. at 169, ¶ 17 ("[B]ecause [the defendant] failed to demonstrate an irreconcilable conflict or a completely fractured relationship with [counsel], the trial court was not required to appoint new counsel."); *see also Goudeau*, 239 Ariz. at 448, ¶ 80 ("If the trial court probes a defendant's request for substitute counsel, the defendant bears the burden of demonstrating either a total breakdown in communication or an irreconcilable conflict with his attorney."(internal quotation marks and citation omitted)). On this record, the trial court did not effectively deprive Luckett of his right to counsel by denying his motions.[1]

## CONCLUSION

¶22        For the foregoing reasons, we affirm Luckett's convictions and sentences.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:          JR

---

[1]        To the extent Luckett contests the effectiveness of counsel, we do not consider such a claim on direct appeal. *Torres*, 208 Ariz. at 344-45, ¶¶ 15, 17 ("Ineffective assistance of counsel is a separate issue that can be raised only in a proceeding for post-conviction relief."); *see also State v. Henry*, 189 Ariz. 542, 547 (1997) (holding disagreements over "tactical decisions" that "raise concerns about attorney competence . . . are more properly analyzed in post-conviction relief proceedings").